UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO ALDACO FLORES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.  1:20-cv-01780-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(ECF Nos. 16, 17) |

　　　　This matter is before the Court on Plaintiff Alejandro Aldaco Flores' ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 9-11.)

　　　　The Court, having reviewed the record, administrative transcript, the parties' briefs, and the applicable law, finds as follows:

**I.　　Plaintiff's Subjective Symptom Allegations**

　　　　Plaintiff first argues that the Administrative Law Judge (the "ALJ") erred in evaluating his subjective symptom allegations. (ECF No. 16 at 4-12.)

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).

Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom allegations by offering specific, clear, and convincing reasons.

Here, the ALJ first summarized Plaintiff's subjective symptom allegations as follows:

> The claimant testified he has a history of diabetes issues and right foot wound issues. He stated that his doctor stated he will need some later surgery. The claimant stated that he lives with his wife and two young children. He stated he could drive his children to school and can drive 'minimally' because he does not wear his boot while driving. He also stated he will have to clean his wound because it will leak. The claimant stated his wife drives to his doctor's appointments. He alleged his typical day involves lying in bed and sitting in the living room. He stated that he elevates his feet at home and does not wear the boot a[t] home. He also alleged he cannot perform any chores at home, nor any yardwork. The claimant alleges he does no exercising. He also stated that he uses crutches to get around the house and uses a cane outside the house. The claimant stated his doctor recommended using the cam boot when leaving the house. He also stated that he did not return to work after his most recent surgery. He stated that he was able to move from his apartment because his brother helped him move. The claimant alleged he did none of the packing either. He did not complete a Function Report.

(A.R. 108.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical

evidence and other evidence in the record." (A.R. 108.)

The ALJ found that Plaintiff was noncompliant with his diabetes medication and other treatments. (A.R. 108-10.) The ALJ reasoned:

> The record reflects the claimant had ongoing treatment for his diabetes and related issues. His records also reveal non-compliance with his diabetes medication, as was noted in 2016 when his blood sugars were elevated (1F/123). A later diabetic foot exam in June 2017, revealed his right foot had some soft tissue swelling with no significant interval progression of the nearby bones (1F/97). Despite his diabetes-issues, he was able to travel to Disneyland in April 2017, while wearing diabetic boots. He complained of a right foot wound after the trip. He also reported he was not taking his diabetes medication (1F/157). In May, the claimant's diabetes medication was refilled and he was referred to podiatry for his right foot ulcer. It was also recommended the claimant improve his diet, as he also admitted he does not regularly check his blood sugars. The claimant also stated that he had been doing well overall and that his right foot wound was healing well (1F/167, 169). The claimant's right foot diabetic ulcer was noted to be caused by a right Achilles tendon contracture, so he underwent right gastrocnemius lengthening in July 2017, without complication (4F/522). It was noted in October, the claimant admitted to eating a lot of barbeque and "a lot of food." The claimant stated that he also feels dizzy and sweaty during the day, so his Metformin was increased (4F/553-558). However, in November, the claimant stated that he had not been working on his diet nor compliant with his medication (4F/563). He also stated that his infection was improving and that he was not taking any more antibiotics. He stated that his wound was improving until about a week prior, when he started seeing a yellow discharge. Despite this, his exam was unremarkable, as he had intact strength, light touch sensation, and normal coordination (1F/186-188).
>
> Eventually, the claimant underwent surgery on his right foot on December 5, 2017. He underwent a trans metatarsal amputation, right foot, which he tolerated well. After his procedure, the claimant demonstrated good functional mobility and was able to use crutches for ambulation. He was told to continue performing his home exercises (1F/222). Additionally, notes from early 2019 state the claimant reporting using the cam boot and still walks a lot on his job. It was recommended that he continue his daily wound care and use crutches with his cam boot (6F/3). The claimant was still having elevated blood sugars as well, reporting that he was eating cookies for breakfast and stated that he was not checking his blood sugar as he was out of testing strips (6F/7). He also alleged that he was unable to exercise due to his right lower extremity pain and continued to complain of blood sugar issues, stating he did not regularly check his blood sugar issues. He did stated the he was limiting his tortilla intake. The claimant also denied any acute complaints (6F/36). The claimant also reported in May 2019, that he was using regular boots (6F/48). However, in July it was noted he was wearing cam boots and was not using crutches to ambulate (6F/69). Then, in September 2019, the claimant was noted to be using "regular shoes" along with a cane to ambulate at his appointment. He was advised on his daily wound care and it was observed his right foot had minimal edema (8F/3).
>
> By early 2020, it was noted the claimant was taking multiple medications for his diabetes and he stated his blood sugars were not well controlled during the recent holidays. He was given a new medication for his diabetes and told to follow-up in six weeks (8F/91). The claimant was still having ongoing wound maintenance, and it was recommended he still continue to clean his ulcer and use cam boot with a

3

> padded insole. He also stated he was using a cane for ambulation (8F/93-4).
>
> Overall, the record reflects that the claimant has had compliance issues in managing his diabetes, as he was not regularly checking his blood sugars, and not willing to take medications, and not following dietary recommendations. Of note, in August 2018, it was noted that he did not have a consistent blood glucose checking schedule; his logs showed random times (1F/262). In February 2019, he reported he had been out of test strips for a while, and he was unable to check his blood glucose levels. His glucometer showed values from months ago, and then quite a few values with no date/time (6F/7). In June 2019, he stated he did not take his medications that morning, and did not have them with him. He was advised to be more compliant (6F/58). A November 2018 note also reflects he was not too compliant with the basaglar (medication), and he was also reluctant to start meal time insulin, as he stated he did not have time to inject himself (4F/562). It is unclear why he did not have time to inject himself, particularly if he was not then working. He also has noncompliance issues related to his hypertension, with the claimant's blood pressure high in September 2019, secondary to the claimant stopping both of his medication (8F/4).

(A.R. 108-09.) The ALJ then described Plaintiff's reports of his diet in October 2018, February 2019, March 2019, and January 2020, including descriptions of eating cookies and coffee for breakfast, tortillas, instant ramen, Pepsi, and birthday cake, as well as reports of reducing tortilla intake, consuming smaller portions, and eating meat and veggies for lunch, which was his largest meal. (A.R. 109-10.)

The ALJ then found that Plaintiff's subjective symptom testimony was "inconsistent." (A.R. 110.) Specifically, the ALJ reasoned:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent. The claimant testified he has been ordered to elevate his legs, but the record does not reflect this. And even if there [sic] were so, there is no indication he could not accommodate this need during regular breaks during the workday. Additionally, the claimant stated that he was not working after the amended onset date, but the notes from October 2018 through March 2019 [f]rom Dr. Nguyen state the claimant reporting using the cam boot and still walks a lot on his job (See 6F/3). The claimant also had a fairly unremarkable physical exam and also recovered well from his surgery. Furthermore, he was noted to be using regular boots in the record and was not noted to be using a cane consistently until 2019 (8F/3). Of note, in January 2019, he was noted to be using a CAM boot. No assistive device is mentioned (6F/3). The next month, in February 2019, it was noted he has been "in boots," indicating he was just in regular boots (6F/14). This was reiterated at visits the next month, in March 2019 (6F/33 and 45), and also at a visit in April 2019 (6F/47). At his next visit on May 1, 2019, it appears this was clarified, as it noted he had been in regular boots (6F/48). This was reiterated at subsequent visits in May, with visits on May 15 and 29, 2019 (6F/55, 56). The next month, in June 2019, the claimant was in a CAM boot and using crutches (6F/60). The next month, in July 2019, he presented to Dr. Nguyen in the CAM boot but with no crutches (6F/69). At his next visit, in August 2019, he presented in a regular boot and with a cane (6F/72). He was in a regular boot, with no mention of a cane at a subsequent August 2019

> visit (6F/74). One month later, in September 2019, he was in regular shoes and with a cane (6F/77). The next month, in October 2019, he was in the CAM boot and with a cane (8F/11). At his next visit in January 2020, he was in the CAM boot and with a cane (8F/95). This was reiterated by Dr. Nguyen at visits in February and March 2020 (8F/92, 94). Interestingly, during this same period, he saw Dr. Ghafarizadeh, who manages his DM and HTN, and he did not note the use of the CAM boot or cane. On exam, he noted no neurological deficits (8F/88-92). He also testified that he is able to still drive, despite his foot issues and neuropathy, even if only for short distances. This demonstrates an ability to perform at least some postural activities. Also, he has few acute complaints in the record, and he appeared to have ongoing issues with medication and diet compliance, which exacerbated his underlying diabetes (6F/7, 36). Lastly, he had diagnoses of diabetic neuropathy, however, there were no electromyogram (EMG) testing results in the record.

(A.R. 110.)

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony. (ECF No. 16 at 8-12.) First, the ALJ focused on Plaintiff's noncompliance with his diabetes medication and dietary restrictions, but did not ask Plaintiff any questions about this at the hearing. (*Id.* at 8-9.) Additionally, the ALJ's reasoning is "problematic" because Plaintiff is not required to provide support for the severity of his restrictions and the relevant Social Security Ruling states that the Commissioner does not consider whether the alleged symptom severity is supported by substantial evidence. (*Id.* at 9.) Plaintiff's impairments from his toe amputations and recurrent ulcers are also permanent regardless of whether he complies with his medication. (*Id.*) The Commissioner, in turn, argues that it was Plaintiff's burden to prove his residual functional capacity ("RFC"), including the genuineness of his alleged symptoms, and he cannot reweigh the evidence. (ECF No. 17 at 6.)

Several of the ALJ's characterizations of the evidence supporting her finding that Plaintiff was noncompliant with his medication were incomplete or inaccurate. Additionally, in several instances, the ALJ did not adequately explain how this evidence undermines Plaintiff's testimony. *See Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines a claimant's complaints.") (citation and internal quotation marks omitted); *see also Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir.2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the

testimony") (emphasis added).

For example, the ALJ described October 2018 treatment notes as noting that Plaintiff "admitted to eating a lot of barbeque and 'a lot of food.' The claimant stated that he also feels dizzy and sweaty during the day, so his Metformin was increased (4F/553-558)." (A.R. 108.) However, these treatment notes indicate that Plaintiff reported a reduction in his carbohydrate intake, including reducing the number of tortillas he eats from 6 to 2, and his SMBG logs showed "2 highs in the 360s (from going to BBQs and eating a lot of food)." (A.R. 1295.) Additionally, Plaintiff denied hypoglycemia but stated he experienced sweating and dizziness "sometimes during the day" but when he checks his BG they are still around 200s. (*Id.*) While Plaintiff's Metformin prescription was increased, there is no indication that this was done because of Plaintiff's reports of sometimes feeling dizzy or sweaty as the ALJ suggests. (*See* A.R. 1295-1300.)

The ALJ also cited to Plaintiff's report in November 2018 that "he had not been working on his diet nor compliant with his medication." (A.R. 108.) The relevant medical records instead state that Plaintiff was not compliant with only one of his medications and had "not been able to work on his diet *significantly* since last visit," while the previous month's treatment notes reflected an improvement in diet, including reduction in carbohydrate intake, as described above. (A.R. 1295, 1304-05.) (Emphasis added.)

In her decision, the ALJ noted that Plaintiff reported improvement in his wound until a week prior, when he started seeing a yellow discharge, but "[d]espite this, his exam was unremarkable, as he had intact strength, light touch sensation, and normal coordination." (A.R. 108-09.) However, the treatment notes that the ALJ relies on state that Plaintiff's right foot was swollen with a 1cm ulcer in the sub metatarsal region of the first and second digit, was warm to touch, and required IV antibiotics and a podiatry evaluation. (A.R. 564, 568.)

The ALJ also relied on treatment notes from Plaintiff's treating physician indicating that Plaintiff "still walks a lot on his job" as evidence that Plaintiff was working after the amended onset date of July 2, 2018. (A.R. 110, 2023.) Notably, there are no earnings records for this period, which is consistent with Plaintiff's testimony that this must have been a mistake or

misunderstanding. (A.R. 137, 309.) Therefore, the ALJ's finding that Plaintiff continued to work after the amended onset date is not supported by substantial evidence. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) ("[The Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.").

Further, the ALJ cited to November 2018 treatment notes reflecting that Plaintiff was reluctant to start mealtime insulin because he did not have time to inject himself. (A.R. 109; *see also* A.R. 1305.) The ALJ then reasoned,"[i]t is unclear why he did not have time to inject himself, particularly if he was not then working." (A.R. 109.) The ALJ therefore acknowledged that there may be some explanation for Plaintiff's failure to comply with his prescribed course of treatment, but indicated she found that explanation to not be credible without identifying any evidence supporting her conclusion.. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (reasoning that an ALJ may discount a claimant's testimony where there is an "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment").

In light of these issues, the Court finds that Plaintiff's noncompliance with his prescribed course of treatment was not a clear and convincing reason for discrediting his testimony.

The ALJ also erred in finding that Plaintiff's testimony regarding his need to elevate his legs was not reflected in the record. (*See* A.R. 109.) As Plaintiff notes, the medical record includes recommendations to elevate Plaintiff's right leg. (A.R. 85, 1181, 1603; Doc. No. 16 at 9.) The Commissioner argues that one of the records Plaintiff cites in his brief post-dated the relevant time period. (Doc. No. 17 at 7-8.) The other two records, which are duplicates, are "sparse" evidence in support of Plaintiff's testimony as "[i]t is unsurprising that medical personnel would instruct Plaintiff to elevate his leg immediately following surgery." (*Id*.) While the Court agrees that one of the records cited postdates the relevant time period, the other treatment notes Plaintiff cites directly contradict the ALJ's finding that there was no record of a recommendation to elevate Plaintiff's leg, thus this conclusion was not supported by substantial evidence.

7

The ALJ also found that, even if Plaintiff were required to elevate his leg, "there is no indication he could not accommodate this need during regular breaks during the workday." (A.R. 110.) However, Plaintiff testified that he was instructed to elevate his leg above waist height, and the vocational expert testified during the hearing that a requirement of having the foot elevated at hip level would preclude employment.[1] (A.R. 139-40, 157-58.) Thus, there was at least some indication in the record that Plaintiff could not accommodate these needs during regular breaks, and the ALJ did not cite any support for her contrary finding. *See Regennitter v. Comm'r. of Soc. Sec. Admin.,* 166 F.3d 1294, 1297 (reasoning that inconsistency with objective medical evidence is only a clear and convincing reason for discrediting a claimant's testimony where the ALJ specifies "what complaints are contradicted by what clinical observations").

The ALJ also noted that the treatment records reflected Plaintiff using different assistive devices at different times. (A.R. 110.) However, it is not clear to the Court how, if at all, this contradicted Plaintiff's testimony regarding elevating his leg, or any of his other subjective symptom testimony. *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (reasoning that an ALJ's findings discounting a claimant's subjective symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony") (citation and quotation marks omitted).

Similarly, the ALJ found that Plaintiff's testimony was not credible because he testified that he is able to drive short distances. (A.R. 110.) Where an ALJ seeks to discredit testimony or opinions as inconsistent with a Plaintiff's daily activities, the ALJ must explain how the inconsistency or contradiction cuts against the statement or opinion being discredited. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error in ALJ's failure to explain how plaintiff's daily activities detracted from his credibility). The ALJ did not identify which statements were discredited by Plaintiff's ability to drive for five miles roundtrip, and did

---

[1] The Commissioner argues that the ALJ was "not bound by the answer to an unsupported hypothetical question." (Doc. No. 17 at 8.) While the ALJ may accept or reject restrictions in a hypothetical question that are not supported by substantial evidence, *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001), here the hypothetical posed to the vocational expert was based upon Plaintiff's testimony, which the ALJ did not properly discount as discussed herein.

8

not explain how this extremely limited activity was inconsistent with that testimony. The ALJ's finding was therefore speculative and unsupported by substantial evidence.

In light of the foregoing, the Court finds that the ALJ erred in her evaluation of Plaintiff's subjective symptom testimony.[2]

**II.     Remedy**

The Court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose. In this regard, the record includes Plaintiff's medical records, the State agency physicians' medical opinions, and Plaintiff's description of his condition and symptoms and their resulting effects. As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting Plaintiff's allegations regarding the severity and limiting effects of his symptoms, including his testimony regarding the need to elevate his leg above hip level. (*See* A.R. 139.) At the hearing, the vocational expert testified that a requirement of elevating the foot or knee or leg above 6-8" in height made it "too difficult" to perform work at the sedentary level. (A.R. 157-58.) Notably, the Commissioner's brief does not dispute the vocational expert's finding

---

[2] Plaintiff also argues that the Commissioner's decision arose from an unconstitutional administrative process. (Doc. No. 16 at 12-17.) In *Kaufmann v. Kijakazi,* --- F.4th ----, 2022 WL 1233238, at *1 (9th Cir. 2022), a Ninth Circuit panel rejected a claimant's challenge to the constitutionality of the President's removal authority over the Commissioner. The panel held that a claimant must demonstrate that the unconstitutional provision actually caused harm. *Id.* at *5. Here, as in *Kaufmann,* nothing in the record suggests any link between the removal provision and Plaintiff's case. *See id.* Therefore, the Court finds that Plaintiff is not entitled to remand on this basis and declines to further address the parties' arguments regarding this issue.

that a person with such a restriction was not unemployable. (*See* ECF No. 17 at 7-8.) Thus, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

Moreover, the record as a whole does not create serious doubt as to whether Plaintiff is, in fact, disabled within the meaning of the Social Security Act. Plaintiff stopped working in 2018 following his right Achilles lengthening and gastronium release to help with the healing of his chronic ulcers. However, Plaintiff developed a new foot ulcer and received various forms of treatment, including use of a CAM boot, crutches, and ulcer, but continued to experience problems and ultimately underwent a below-knee amputation after the ALJ's decision was issued. In these circumstances, the Court declines to remand this case for further proceedings and will reverse the Commissioner's decision and award benefits.

**III.    Conclusion**

Accordingly, IT IS HEREBY ORDERED:

1. The decision of the Commissioner of the Social Security Administration is reversed;
2. The matter is remanded for the immediate award of benefits; and
3. The Clerk of Court shall enter judgment in favor of Plaintiff and shall close this case.

IT IS SO ORDERED.

Dated:   **May 4, 2022**                           /s/ Erica P. Grosjean
                                                   UNITED STATES MAGISTRATE JUDGE